ST. PAUL, J.
 

 This is an action to recover the sum of $2,190.33, amount of a deposit made by a purchaser on a promise of sale, and retained by the vendor as a forfeit for the alleged failure of the purchaser to comply with his agreement. Plaintiff also claims $1,500 as the rent of the premises for the year 1918.
 

 I.
 

 The facts of the ease are as follows:
 

 On November 22, 1917, defendant entered into a contract with one J. E. Hollier, by which defendant agreed to sell, and said Hollier agreed to buy, a certain tract of land containing 425.42 acres; the sale to be passed at Opelousas on March 22, 1918. The price agreed upon was ($50 per acre, to wit) $21,271, as follows: $1,100 paid that day, $1,090.33 to be paid December 23, 1917, $4,900 to be paid March 22, 1918, with interest at 7 per cent, from January 1, 1918, and the balance in 10 annual installments (notes) bearing interest at 7 per cent, from January 1, 1918; the
 
 purchaser
 
 to have the rents for the year 1918.
 

 The contract further provided that:
 

 “Failure on the part of said Hollier to pay the amounts due as aforesaid, namely, December 23, 1917, or March 22, 1918, and to be present for the passing of said sale, shall cause a forfeiture of the amount paid this day; which amount the said Boagni sl/all retain.”
 

 Thereafter Hollier assigned his interest in said contract to plaintiff, who reimbursed him the $1,100 paid on November 22d, and on December 23d plaintiff paid defendant the $1,090.93 due that day.
 

 On March 8, 1918, defendant wrote plaintiff as follows:
 

 ■ “I would like to find out from you what day you will be here to pass sale, as I have some business away from town and want to arrange it so as to be here the day you name. Let me know, and oblige, Yours Truly.”
 

 To which letter defendant received no answer.
 

 On March 22, 1918, plaintiff failed to come to Opelousas to pay the $4,900 and pass the act of sale, either because he could not get the money that day or because he thought the day specified in the contract was March 23d.
 

 That, however, is immaterial; for it is not pretended that defendant deceived plaintiff in any way, except in so far as it is argued that his letter of March 8th was misleading. But that letter, quoted in full abové, speaks for itself, and the most that can be said of it is that plaintiff might have inferred therefrom that defendant would not insist on the contract being carried out on the very date therein specified. But, if so, it behooved plaintiff to advise defendant on what day he purposed to pass the sale. This he did not do but, on the contrary, remained silent during the 14 days that elapsed between the date of that letter and the date specified for the passing of the act of sale.
 

 
 *437
 
 But on the- day last mentioned, to wit, March 23d (being the day following that on which, according to the contract, the sale should have been passed), plaintiff came to Opelousas with the $4,900 which was to be paid on the passing of the sale, and demanded of defendant a deed to the property. But defendant refused to make the deed, and claimed the amount already paid, $2,190.33 ($1,100 plus $1,090.33), as forfeited, by reason of plaintiff’s failure to appear on the day before as specified in the contract.
 

 On that same day, March 23d, plaintiff then entered into a new contract with defendant, by which defendant agreed, to sell and plaintiff agreed to buy the same 425.42 acres of land; the act of sale to be passed on November 15, 1918. The price agreed upon was the same as in the first agreement, to wit, $21,271 ($50 per acre as aforesaid), payable as follows: $4,000 paid cash at the signing of the agreement, $3,090.33 to be paid upon the passing of the act of sale, and the balance in 10 annual installments (notes) bearing interest at 7 per cent,
 
 from, November 15th, 1918; the vendor
 
 to have the rents for the year 1918, and to pay the taxes for said year. From this sale was to be excluded a house and barn and sundry agricultural implements and movable property (value thereof not shown).
 

 . The contract also provided that “failure on the part of said Tobey to pass the sale on the date agreed, viz., November 15, 1918, by .paying the aforesaid sum ($3,090.33) and executing the aforesaid (10) notes shall cancel and annul this promise, and said Boagni shall retain the amount ($4,000) this day paid as one of the considerations of this promise of sale.” , This last contract was duly and promptly carried out.
 

 II.
 

 Defendant, in his answer (paragraph ’ll) says:
 

 “(1) That the transfer by said Hollier to said Tobey was merely a right to accept or reject within the stipulated -time * • * t .the promise on the part of said Boagni to sell to said Hollier, * * * and said Tobey, having failed to comply by buying within the time specified * * * cannot now enforce said promise of sale.
 

 “(2) That said Tobey was fully aware that his right was only a right to purchase, * * * and so treated the same by not making any claim for the money paid by Hollier or by himself, * * * but (on the contrary) by enter.ing * * * jute a (new and different) agreement to purchase from defendant the identical property. * * *
 

 “(3) That but for the fact that said Hollier and said Tobey had paid him ($2,190.33, to wit) $1,100 and $1,090.33, respectively, he would not on March 23, 1917, have made a promise of sale of said property to said-Tobey; as defendant could at that time have sold same to other parties who were seeking to purchase same at a much greater profit.”
 

 Upon this subject the trial judge says (and the testimony supports him) that:
 

 “The evidence clearly establishes that on March 22, 1918, plaintiff failed to come to Opelousas to carry out the agreement contained in his contract, but came the next day, and that defendant refused to sell the property, contending that plaintiff should have been there the day before.
 

 “Defendant testified that he had several purchasers waiting that day to close a deal for the property, and names them; that he could have sold same at a greater profit, but on account of Hollier and Tobey having paid him ($2,190.-33) $1,100 and $1,090.33, he considered that he owed them something, and did on March 23d make a (new) promise of sale to Tobey of the identical property; and that but for the consideration that he had received a forfeiture from them he would not have given plaintiff the preference.
 

 “Asked the question: You told him .so at the time?’ he answered, Yes.’ Question: ‘He acquiesced in it?’ Answer: ‘He did.’ Question: ‘Did he then make any demand for the return of forfeit?’ Answer: ‘He did not.’
 

 v »i* 4* ‡
 

 “The evidence leaves no doubt in the mind of the court that defendant could have sold this property at a profit, * * * but as stated by him, the said Hollier having paid him $1,300, and the plaintiff $1,090.33 (this), induced him to make a (new) promise of sale * * * for the same consideration for which he was to sell to Hollier,' upon condition of his retaining the' amount already paid. ,
 

 
 *439
 
 “There is no doubt about this. Boagni so testified, and plaintiff, though present in court, never denied it.”
 

 Defendant had testified thus:
 

 “Question: And you notified him then (March 23d) that he had come too late? Answer: Tes, and gave him the contract to read. * * * But he left the office and said he was going to see about it and decide what action he would take. He came back later, and said, ‘Well, I admit that I will lose this one, but you should have some consideration for me and make me a sale of this property.’ I had told him that I had several purchasers who were waiting that day to close the deal for the property. * * * I considered that I owed Mr. Tobey some consideration, and offered him the property at the amount for which he purchased it. * * * I never would have * * * entered into the second contract with Mr. Tobey but for the consideration that I had gotten a forfeit. I gave him the preference over other parties. He came back, and we entered into an agreement to close the deal; he giving up the forfeit. [Then follow the three questions quoted by the district judge.)”
 

 This again was not only not denied by plaintiff, but rather
 
 corroborated
 
 by his testimony previously given, wherein he said:
 

 “ * * * I turned it (this property) over to Mr. Schell, and I know I made a profit on it. I just want to corroborate a statement why I sold this. I bought this for a home; my intention was to buy the Miliick and Daly tract for a rice farm, as it was too low for a building place, and this was near, and I wanted that for a home. But after I fell down on these deals, and was treated so bad on this Wartelle place, I felt like I never wanted to come to Opelousas, much less live there. When I did purchase it ,at the last, * * *
 
 I bought this with the intention of trying to make myself whole;
 
 it was a matter of total loss, sit down and quit.”
 

 III.
 

 We have already said that even if plaintiff might have been misled by the defendant’s letter of March 8th, yet he was himself to blame for not responding to that letter and
 
 ■fixing
 
 some date. . For that letter was at most only an offer to fix some other day, which offer was not accepted by plaintiff; it could not be construed as an invitation to plaintiff to come whenever he pleased; it said very plainly “Let me know,” and gave a reason.
 
 That
 
 called for an answer, if plaintiff meant to come any other day than the day specified, and, if plaintiff was mistaken as to what that day was, 'it was no fault of defendant’s, who had at no time
 
 misstated
 
 that date.
 

 IV.
 

 By comparing the promises of sale of November 22d, with that of March 23d, it will be seen that in the former the price was to bear interest from January 1, 1918, whilst in the latter the price was to bear interest only from November 15th, that in the latter the vendor was to pay the taxes for 1918, and in the former the purchaser was, .of course, to pay the same. This readily shows the reason why in the former contract the purchaser was to have the rents for the year 1918, whilst in the latter the vendor was to have them, and thus disposes of any equity in plaintiff’s claim for that rent, even were his claim otherwise good.
 

 V.
 

 It will further be observed that, adding to the price paid for the land by plaintiff $21,-271, the $2,190.33 previously paid by Hollier and himself, making $23,361.33 in all, the land cost plaintiff exactly $55.15 per acre. Now, plaintiff testifies that when he sold he got from $60 to $65 an acre (defendant says some of it sold for $75 an acre). Hence plaintiff realized a profit of from $5 to $10 an acre, or between $2,125 and $4,250 on the 425 acres.
 

 VI.
 

 So that, to epitomize a long story, the case stands simply thus: Plaintiff came to Opelousas one day too late to carry out his contract according to the tenor thereof; he felt, or claimed, that he had been misled by defendant’s letter, of March the 8th; defendant thought and claimed otherwise, and insisted that plaintiff had forfeited all rights
 
 *441
 
 under the contract, together with the full amount previously paid; plaintiff thought it over- and reached some conclusion or other, the upshot of which was that he stated to defendant that he felt entitled to some consideration under the circumstances, and defendant thought so too; whereupon defendant sold the land to plaintiff at a price which enabled the latter to make a profit thereon sufficient to reimburse himself the full amount previously paid
 
 plus
 
 a profit.
 

 In other words, plaintiff had the opportunity to stand on his asserted rights and insist on the contract being carried out; but by so insisting he ran the risk of ultimately losing at least $1,100, and perhaps the whole $2,190.33. On the other hand, he saw an opportunity to “make himself whole”; he asked defendant for the chance of doing so, and defendant accorded him that chance by giving him a preference over other purchasers, because he had already paid $2,190.33.
 

 Here then was, on the one hand, opportunity for litigation with possible loss at the end thereof, and, on the other hand, opportunity for full reimbursement, with possibly a profit added. Plaintiff chose the latter opportunity, and in our opinion that ended the matter. For here was clearly a compromise and adjustment of the difference between the parties.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.